Good morning, your honors, and may it please the court. My name is Mark Ebert and I represent Mr. Smith. Your honors, clearly established Supreme Court precedent tells us four things that are relevant to this case. First, that the Sixth Amendment confrontation right is a trial right and that it cannot be waived by prior cross-examination. That's the Nelson, Barber, and Green Supreme Court cases. Second, that the federal courts have a very strong preference for live testimony at trial because the confrontation right is not just a right to cross-examine. It's also a right for the jury to observe the demeanor of the witnesses. But there are exceptions, are there not, counsel? Yes, your honor. And if you'll tell me which ones you're thinking of, I can just think which ones. For example, co-conspirator declarations in the course and furtherance of a conspiracy. Yes, but that's not an issue. You don't get an opportunity to cross-examine the declarants in that situation. Yes, your honor, but that's not the situation here. Here the question is whether the prior preliminary hearing opportunity to cross-examine was sufficient to create an exception. And it's not. Don't we have a case that's pretty close that approves the opportunity for prior cross-examination? Well, actually, your honor. If you're talking about California v. Green? That's the one I was thinking of. Okay. In that case and, in fact, in all three of the cases that the government or the state cites for saying that if there's an opportunity to cross-examine prior hearing, that's enough. In all three of those cases. I would deny that you had the opportunity. Your concern, I think, is that the lawyer doesn't do a very good job. In effect. That's one concern. That's one concern, your honor. Can we consider the cross-examination that was conducted by the co-defendant's lawyer? I don't think that's. That is not cross-examination by this defendant. In fact, the co-defendant was acquitted at trial, the first trial, and the second trial didn't even involve him. Therefore, that cross-examination. I believe that your client's trial heard the cross-examination by the other lawyer as well as by your client. Well, that gets into this. I'm sorry, but you're building up questions, and I want to answer all of them. What was this one question? The first question was the case. Did the jury hear or did it not hear? Yes, I believe it did, but I want to come back to an earlier one. But what I wanted to say in response to that question was that comes down to the cross-examination, the opportunity to effectively cross-examine. My question is if the jury heard cross-examination of the same declarant by co-counsel who both had the same motive, opportunity, et cetera, to cross, does that enter into our consideration of whether or not there was a Sixth Amendment violation? Your Honor, the thing is that the inability to effectively cross-examine this witness applied to both counsel because this witness, number one, denied making the statement, and number two, effectively denied that the statement was true because he said he didn't know anything about the underlying facts. What more could an effective cross-examiner have elicited? That's pretty damning. It is. But my point, Your Honor, is, and I'm looking at the Nelson v. O'Neill case and Barbara, excuse me, not Barbara, but Brown and Bishop cases, is that there's no effective ability to cross-examine someone who says I didn't make the statement and it's not true. What is the attorney going to say? What more does a cross-examiner want to elicit from a witness other than a complete retraction of the damning statement? What I'm saying, Your Honor. The argument is this is an ineffective cross-examination, and my question to you is what more could a good defense lawyer have elicited from the witness other than I take back everything I said that incriminates my client. Nothing because the statement was presented in a manner which would not allow effective cross-examination. But you keep saying effective cross-examination, but you're not answering my question. What more could the questioner have done? Nothing but the reason is because it was presented in a form that would not allow effective cross-examination. You're still not answering my question. What more, assuming that the witness had been questioned further by your client's What other admissions would you want to elicit from the declarant once you've got the declarant recanting everything that he said? Nothing. The answer to your question is nothing. You've got that. But actually, Your Honor, I'd also like to point out that the statement at the But there was cross-examination. There was cross-examination. It didn't result the way you'd like it to result, but there was cross-examination. Again, I keep coming back to the ability to effectively cross-examine the witness, as well as, of course, the inadequacy of the cross-examination that actually occurred. Remember that at the preliminary hearing, the prior statement was not played into the record or read into the record by the court. The information or the implication that the prior statement was made was solely made through questions by the prosecutor. In other words, he turned all of the prior statements that he alleged happened into questions, and the witness then denied them, said, I didn't say that, and I don't know the underlying facts in any event. Isn't that essentially the same thing? I mean, I keep going back to what more, what more, what more. And the answer is there's nothing more that they could have done at the preliminary hearing for the reasons that I stated. And that kind of method of eliciting testimony through questions which are denied is exactly what is condemned in the Bishop case, and it's exactly or very similar to what the Supreme Court said in Nelson v. O'Neill, make effective cross-examination impossible. And I'd also like to point out that at the actual trial, when the witness refused to testify, the prosecutor used that in order to make a three-level bootstrap. One, he got in the preliminary hearing transcript, which, again, was questions by the attorney which are not evidence and which prevented any effective cross-examination. He then used that to bootstrap in the prior, the tape of the prior inconsistent statement, which was never admitted at the preliminary hearing and which the State Court of Appeal itself said was improper to admit. And third, they then used that to bootstrap in the information that Mr. Smith was a member of a gang which had a history or a practice of threatening witnesses, even though this witness denied under oath that he had been threatened. That was extremely prejudicial evidence. And I want to say something for rebuttal. You may do so, counsel. But I want to say one other thing. I'm not going to argue the uncertified issue. It has not been briefed by the State, but this is one of the more significant uncertified issues I've ever raised, so I'd like to urge the Court. I would waive oral argument, but I would like to urge the Court to ask for further briefing on that. Thank you, counsel. We'll hear from the government. Good morning, Your Honors. Thank you, Your Honors. Good morning. Bob Snyder, Deputy Attorney General of the State of California. May it please the Court, counsel, The global thing I'd like to say first is that the real issue before the Court is whether the California Court of Appeals application of clearly established Supreme Court precedent was either contrary to or an unreasonable application of that Supreme Court precedent. The District Court concluded that it was not, and I would urge this Court to conclude the same because there are a lot of Supreme Court cases that touch on this issue, but the central one, of course, is Crawford v. Washington, and that case held, Justice Scalia concluded that where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is confrontation, and that's the precedent that the California Court and the District Court applied. The reason the application was correct is because the test that was met is that the opportunity to cross-examine was provided, and I think this goes really to Judge Tallman's questions. At the preliminary hearing stage, the lawyer for the defense really knows nothing. They've had no discovery. They barely met the witness. I mean, the defendant and the issue, hearsay is admissible. The issues are not clear. All the judge is looking for is evidence of a prima facie case that the crime has been committed. So I think the question here is really, what is an opportunity for effective cross-examination? Is it a rule of law that if it's testimonial and it's a preliminary hearing that it is an opportunity for effective cross-examination? Well, I think, Your Honor, the Supreme Court's cases don't really reach the issue of effectiveness. Delaware v. Fensterer, United States v. Owens, Delaware v. Van Aerstal all speak about the opportunity for cross- as distinct from a cross-examination that we might wish to see on appeal or that we might, in hindsight, wish had been done. In this case, the defense did have the benefit of the audio tape and the police report, as well as Detective Freeman's testimony at the prelim. So while it's true that we didn't get the audio tape into the prelim evidence, we did have not only the same content through questioning of Frasan, but we had also the testimony of Detective Freeman, who tilled the same ground, both on direct and cross. I was interested also in Judge Tallman's question, which was whether the co-defendant's cross-examination should count toward- and I think it has to, particularly when the co-defendant goes first. Putting ourselves in the place of petitioner's appellant's attorney, if co-defendant's counsel has carried the laboring oar and has elicited exactly what the defendant wishes to elicit, it would, I think, even become a negative to retell the same ground. It certainly risks the trial court's wrath for being cumulative and repetitive. So the implications of not counting the co-defendant's cross-examination seem pretty profound to me. There isn't any law that I could find that addresses the subject, which is why I wanted to hear what opposing counsel had to say on the subject. But I think we've all had the experience in a multi-defendant trial of watching a lawyer do a very effective job of cross-examination, only to have it undercut by the next lawyer who gets up and takes a shot at cross-examination and rehabilitates the witness through a poor cross-examination. And that doesn't seem to be the problem that we have. No question about it, Your Honor. Fortunately, these two defendants had an identity of interest. And what's also interesting about this case is, you know, our Sixth Amendment talks about the right to be confronted with witnesses against the defendant. This is, at bottom, a witness for the defendant. He's recanting everything that he said that hurt him. And, you know, as a practical matter, we couldn't have cross-examined the audio tape. It just can't be done. All you really have to cross-examine is Detective Friedman, who elicited the tape and was cross-examined, and the witness himself, who was cross-examined at the preliminary hearing. So I think the real risk for both defense counsel in this case was to cross-examine too far. What he had from direct was great stuff. The prosecutor asked about 100 questions, 75 of which were answered with denials or favorably to the defendant. And so the real risk that counsel ran would have been to cross-examine too much. And, you know, in Trial Practice 101, we learned, if you've got something good, leave it alone. And that isn't a bad lesson for the defense attorneys in this case. I just don't understand what more anybody can hope to elicit once the witness recants everything they've said. I think, Your Honor, the best the defendants could have done is what they actually did do, which is to repeat the salient points. You know, if we look at the prelim cross, we'll find four times both defense attorneys were able to elicit the statement, I told him, meaning the officer, I don't know nothing about this case. If the trier missed it the first time, it was repeated four times on cross-examination. Three times they elicited they were switching my words around. And twice they elicited that Detective Freeman, according to the witness, was still trying to force me to say something. So while the cross didn't really uncover new ground, it was actually very effective in reiterating the trouble that the prosecution had with this witness. I think the fact situation opposing counsel needs, and unfortunately doesn't have, is no cross-examination at all, or no witness appearing at the prelim.  But the limits of Crawford, Your Honors, really are the opportunity for cross-examination. I would submit to the court that that was provided at the preliminary hearing and further covered by Detective Freeman's own testimony, unless there were questions from the panel. No further questions. Thank you, counsel. Thank you, Your Honor. Mr. Reitberg, do you have some reserved time? Yes, thank you, Your Honor. Very briefly, one, I knew there was a question by Judge Hullman that I didn't get back to, which is that all three of the cases that say that a prior opportunity for cross-examination is enough, which have been cited by the state, are cases in which the witness actually testified at trial. And the only problem was that they couldn't remember things that the defense wanted to elicit. One, because his brain was fried on LSD at the time. One, because the expert couldn't remember the basis of his opinions, which sounds like one of my experts. And the third, I can't remember, but all three of them, they actually testified at trial, so confrontation was not an issue. Also, in the Green case, the court found a — Don't you need a Supreme Court case that extends the mere opportunity to declare that it has to be an effective opportunity? Well, first of all, Your Honor, I think that Nelson v. O'Neill does that, and I think that the Bishop and Brown case, which is a Second Circuit case but relies on Supreme Court precedent of Bruton, does that. Secondly, this Court invented — Thank you for that Second Circuit case. I do, but it's in my brief. It's in my brief, yeah. I talk about it on pages 24 and 27. Which — what's the name of it? Brown — U.S. v. Brown v. Bishop. Let's see. Also, this Court has said in Van Tran the part that was not overruled, as this Court noted in Garbino, that it can be an unreasonable application of federal law if the state court applies the governing rules to a new set of facts in a way that is objectively unreasonable or fails to extend clearly established legal principles to a new context in a way that is objectively unreasonable. I think that Nelson v. O'Neill and the other case, Bishop, already do that extension, but I would point out that that's not necessary given the extensive Supreme Court precedent that's already there. Lastly, I would point out that there — that as in Nelson and Bailey, there was no meaningful cross-examination because of the form in which it was taken. The co-defendant wasn't at trial, and the real evidence was not what the questions asked by the attorney at the preliminary hearing. The real evidence was the prior statement was not admitted at the preliminary hearing and which the California Court of Appeals ruled should not have been admitted. It was error to admit at the trial of this case. Isn't that an error of state evidentiary law? That is. And we really can't do much on federal habeas review. Not per se, but it certainly shows that the California courts considered that hearsay to be unreliable. It certainly is part of — it's a big part of the bootstrapping that gets in one, two, three, and ends up with gang evidence and witness intimidation. I understand that argument, but the concern I have is that if the California court ruled that even though it was a violation of state law, it was still harmless error, don't we have to give that ruling? Well, in and of itself, the violation of state evidence law is not a federal habeas issue. I agree with that. I think here, though, it's so inextricably intertwined with all of the evidence that should not have been admitted that you really can't separate them. And if you will allow me to answer the harmless error question. Very quickly, Counsel. We're way over time. It's not harmless, number one, because it got in the gang evidence, which was extremely prejudicial, and the witness intimidation evidence, which was extremely prejudicial. Number two, the Ramirez-Flores identification testimony was extremely weak. The fact that Mr. Smith, that the jury hung in favor of acquittal in the first trial and acquitted him on the attempted murder charge in the second trial shows that it was Mr. Ramirez-Flores' testimony as well that the jury didn't believe. And the evidence of the gunning was inconclusive. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision, and the court will hear argument next in Monts v. Pilgrim Films.
judges: Lefkow, O'scannlain, Tallman